**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Christine Ingemi
Richard Ingemi

    v.                                                       Civ. No. 20-cv-120-AJ
                                                        Opinion No. 2023 DNH 084

Deutsche Bank Trust Co. Americas,
As Indentured Trustee for the
Registered Holders of Saxon
Asset Solutions Trust 2006-1,
Mortgage Loan Asset Backed Notes,
Series 2006-1

**O R D E R**

In this mortgage-related case removed from state court, plaintiffs/mortgagors, Christine and Richard Ingemi ("the Ingemis"), claim that defendant/mortgagee Deutsche Bank Trust Co. Americas ("Deutsche"),[1] breached a trial loan modification agreement and unlawfully foreclosed on their home.  Before the court is Deutsche's motion for summary judgment (Doc. No. 37). See Fed. R. Civ. P. 56.[2]  As explained more fully below, Deutsche's motion is granted in part and denied in part.

---

[1] The full name of the defendant is Deutsche Bank Trust Co. Americas, As Indentured Trustee for the Registered Holders of Saxon Asset Solutions Trust 2006-1, Mortgage Loan Asset Backed Notes, Series 2006-1.

[2] The court conducted a hearing on defendant's motion on June 8, 2023.  During that hearing the court gave the parties an opportunity to supplement their filings to address legal issues identified by the court, but not addressed by the parties.  The parties having filed those supplements, see Doc. Nos. 41-44, the motion is now ripe for resolution.  See Fed. R. Civ. P. 56(f)(2) (the court may grant summary judgment on grounds not raised by a party after notice and a reasonable time to respond).

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. In considering a motion for summary judgment, the court may review materials cited in the motion and other materials in the record. Fed. R. Civ. P. 56(c)(1)(3). The movant bears the initial burden of presenting evidence that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018).

Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [their] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce evidence on which a reasonable factfinder could base a favorable

verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### Factual Background[3]

In 2005, the Ingemis granted a mortgage to a predecessor in interest to Deutsche, secured by property located in Amherst, New Hampshire. The mortgage was subsequently assigned to Deutsche.

The Ingemis eventually fell behind on their mortgage payments and attempted to obtain a loan modification in 2017 from Ocwen Loan Servicing, LLC ("Ocwen"), the loan servicer at the time. On May 31, 2017, the Ingemis were approved for a

---

[3] The facts described herein are undisputed unless otherwise indicated. The court notes that the plaintiffs' objection does not comply with LR 56.1(b), which requires that a memorandum in opposition to a motion for summary judgment "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." While the plaintiffs' objection takes issue with the defendant's legal arguments, the factual underpinnings of plaintiff's objections are not accurately cited, if they are cited at all. The purpose of the statement of material facts is to focus "a district court's attention on what is -- and what is not -- genuinely controverted." The identified shortcomings result in additional record-checking and difficulties for the court when resolving the motion. Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). The lack of a coherent chronology has left the court to sort through correspondence that the parties have attached to their filings, but have mostly failed to explain.

3

trial period plan, known as the Ocwen Streamline Modification plan ("trial plan"). The trial plan required the Ingemis to timely make three trial payments of $2,763.72 each for the months of July, August and September 2017.  Successful completion of the trial plan would qualify the Ingemis for a permanent modification of the mortgage loan.

The Ingemis timely made their July payment.  But Deutsch, initially believing it had received the payment after the July 31, 2017, deadline, did not apply the payment to the Ingemis' account and instead returned their check in a letter dated August 4, 2017.  On August 29, 2017, the Ingemis appealed the cancellation of the trial plan, supplying evidence of timely payment.  Ocwen acknowledged, by letter dated September 25, 2017, that the July payment was, in fact, timely.

After acknowledging receipt of the July payment, Ocwen reinstated the trial plan.  The September 25, 2017, reinstatement letter required the Ingemis to make all then-past due trial payments of $2,763.72, covering July through September 2017 for a lump sum of $8,291.16, within fourteen days.  If the payment was received after September 30, 2017, the lump sum payment needed to include an October payment as well, for a total of $11,054.88.  The Ingemis made no payment and Ocwen cancelled the trial plan.  In their objection, the Ingemis claim they did not receive the September 25, 2017 reinstatement letter

4

prior to the expiration of the fourteen-day deadline contained in the letter.[4]

A foreclosure sale was eventually scheduled for April 8, 2019. On March 29, 2019, the Ingemis submitted a new loan modification application to Ocwen. See Def. Mem. Exh. 7 & 8 (Doc. Nos. 37-8 and 37-9). Ocwen subsequently denied the application. See id., Exh. 9 (Doc. No. 37-10). Specifically, Ocwen was "unable to offer" the Ingemis any of their available modification or forbearance plans because the Ingemis' account had a confirmed foreclosure sale date within 7 business days. Id. A Non-Approval Notice dated April 2, 2019, was sent to the Ingemis. See id. The Ingemis contacted Ocwen, seeking to postpone the April 8, 2019 foreclosure. On April 4, 2022, Ocwen advised Mrs. Ingemi that they had "requested to place the

---

[4]This contention cites to paragraph 16 of the Amended Complaint, which mentions the Ingemis' appeal, but misstates the contents of the September 25, 2017 correspondence as Ocwen admitting their mistake, "but that it was too late . . . to reinstate the trial payment plan." Am. Compl. (Doc. No. 25) ¶ 16. The letter, as noted above, indicates what steps the Ingemis needed to take to keep the trial plan active, including making the payments they had already agreed to make. The language in the objection – indicating that the letter was not "receiv[ed] . . . prior to the 14-day deadline . . ." suggests that it was received at some point. The objection does not indicate when it was received. Exhibit B to the Ingemis' objection (Doc. No. 39-1) suggests that Ocwen emailed a copy of the September 25, 2017 letter to Mrs. Ingemi on November 20, 2017. A different exhibit suggests that Ocwen had earlier read the letter's contents to the Ingemis. See Pltf. Obj., Exh. B. (Doc. No. 39-3).

5

foreclosure on hold." The Ingemis interpreted Ocwen's response as indicating that the foreclosure sale was postponed. A foreclosure sale occurred on April 8, 2019.

In September 2019, the Ingemis filed this action in state court. Deutsch subsequently removed it to this court, (Doc. No. 1), and the Ingemis later amended the complaint. (Doc. No. 25). The court previously denied Deutsch's motion to dismiss. See Order (Doc. No. 31).

## **Discussion**

The Ingemis assert five causes of action under state law: 1) breach of contract; 2) violation of N.H. Rev. Stat. Ann. § 479:25, which prohibits foreclosures sales in the absence of default; 3) negligent misrepresentation; 4) breach of the covenant of good faith and fair dealing; and 5) violation of New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-a. See Am. Compl. (Doc. No. 25). The court addresses them in turn.

A.  Breach of Contract

In Count I, the Ingemis claim that Deutsch breached the trial plan by cancelling it and later breached a promise not to foreclose. Deutsch argues that the undisputed facts show that the trial plan was cancelled because the Ingemis failed to make the required trial payments. They further argue that there was no promise to forego foreclosure.

6

1. Trial Plan

Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Pro Done, Inc. v. Basham, 210 A.3d 192, 196 (N.H. 2019) (quoting Lassonde v. Stanton, 956 A.2d 332, 338 (N.H. 2008)).

As set forth above, Deutsch originally believed that the Ingemis' July payment under the trial plan was received late, changed is position after accepting the Ingemis' appeal, and required the Ingemis to bring the payment schedule up to date by remitting the returned July payment, along with the August, September, and, if applicable, an October payment. The Ingemis do not dispute that they made no payments; instead, they contend that they never received Deutsche's September 25, 2017, letter informing them their appeal had been successful, and requiring them to resume fulfillment of their obligations under the trial plan. Pl. Obj. (Doc. No. 39) ¶ 5. This contention is sufficient -- though barely so -- for purposes of summary judgment, to create a genuine issue of material fact as to whether the Ingemis received the September 25, 2017, letter resolving the appeal in their favor and instructing them to resume making trial plan payments. See Indian Head Milwork Corp. v. Glendale Homes, Inc., 185 A.2d 259, 260 (N.H. 1962) (letter sent is presumed to be received absent proof otherwise); see also,

7

Wilson v. Frankfort Marine, Accident & Plate Glass Ins. Co., 91 A. 913, 914 (N.H. 1914) (rejecting presumption where alleged receiver of letter testified that he did not receive it).[5]

There is no dispute that Deutsche mistakenly rejected the Ingemis' first payment. Nor is there any dispute that the Ingemis made no further payments pursuant to the trial plan.[6] But whether they received the September 25, 2017 letter, and that letter's legal significance, are matters that will have to be resolved at trial. Deutsche's motion for summary judgment is therefore denied as to the claim in Count I that Deutsche breached the trial plan.

2. Promise Not to Foreclose

On April 4, 2019, four days before the eventual foreclosure, an Ocwen representative informed the Ingemis by email that "we have requested to place the foreclosure on hold." Def. Mem. Ex. 10 (Doc. No. 37-11). The Ingemis assert that this

---

[5] The Ingemis do not dispute that the September 25, 2017, letter was mailed. But the court notes that Deutsch has pointed to no evidence in the summary judgment record indicating that that the letter was mailed. The court is unaware whether this issue was pursued during discovery.

[6] Correspondence attached to the Ingemis' objection suggests that they were informed on September 13, 2017 that a decision on their appeal would be forthcoming on or before September 29, 2017. The Ingemis assert that their next contact with Ocwen was November 3, 2017, more than a month after the date they were told they would receive a response; that response is the September 25, 2017 letter they claim not to have received.

email came in response to their April 2, 2019 request to postpone the foreclosure that was scheduled for April 8, 2019. Pl. Obj. (Doc. No. 39) ¶ 9. The Ingemis argue that Ocwen's statement constituted a promise not to foreclose. The court disagrees.

Plaintiffs seek to have the court ignore the plain language of the email. They dismissively describe Ocwen's position as "one corporate flunky [asking] a second to consider doing the thing the Plaintiffs had requested." Id. ¶ 10. Although the Ingemis admit that Deutsche's position is "plausible," id. ¶ 11, they assert, that "it is not a stretch" for [the Ingemis] to have concluded that the 'request' was to someone in power, like the law firm conducting the foreclosure." Id. It is difficult for the court to discern the purpose of this assertion which, in effect, undermines the argument the Ingemis are trying to make. Presumably, as both parties seem to agree, the Ocwen representative's request "to place the foreclosure on hold" was going to be made to another person or entity with involvement in the foreclosure. Regardless, it was not, by its terms, a promise not to foreclose. There is no evidence in the summary judgment record from which the court can find that there is a genuine issue of material fact about whether the Ingemis were promised that the April 8, 2019, foreclosure was postponed.

Equally unavailing is the plaintiffs' assertion that the lack of a "paper trail showing Call Center Flunky making a "request" to Corporate Flunky[.]  Plaintiffs think the Defendant is making this up . . . " creates a disputed fact as to whether there was a promise not to foreclose or a failure to request a hold.  At the summary judgment stage of a case, it is the plaintiffs' burden to point to record evidence that the defendant "made something up."  If discovery yielded evidence suggesting that no such internal request was made, the Ingemis would have cited it in their objection; they did not do so.

Finally, plaintiffs assert that "[the] email's language is pretty darn clear" and that the defendant should be held to provide more proof that the plaintiffs "misconstrued it."  In the court's view, the language is clear, but not in the way the plaintiffs contend.  Indeed, the plaintiffs' position, unsupported by any competent evidence, seems to be that an individual they describe as a "flunky" had the authority to postpone a foreclosure sale.  The court declines to engage in such speculation.  See Tobin v. Fed. Express Corp., 775 F.3d 448, 451 (1st Cir. 2014) (observing that "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment.").  Based on the foregoing, Deutsche is entitled to summary judgment on the Ingemis' claim in Count I that it

10

breached a promise not to foreclose on the Ingemis' mortgage. Accordingly, Deutsche's motion for summary judgment is granted in part and denied in part as to Count I.

B. N.H. Rev. Stat. Ann. § 479:25

In Count II, the Ingemis claim that Deutsche violated New Hampshire's law governing foreclosure sales, N.H. Rev. Stat. Ann. § 479:25. Pursuant to this statute, default is a statutory pre-condition to foreclosure, and the Ingemis argue that they were not in default at the time of the foreclosure sale.[7] In its motion, Deutsch asserts that the documents before the court indisputably demonstrate that the Ingemis were in default and that the foreclosure was therefore conducted legally.

The record reflects that summary judgment is appropriate for a different reason. Pursuant to section 479:25, a mortgagor's failure to petition the New Hampshire Superior Court to enjoin the foreclosure sale prior to the sale "shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure." N.H. Rev. Stat. Ann. § 479:25, II(c); See Bank Of New York Mellon v. Dowgiert, 145 A.3d 138, 142-43 (N.H. 2016) (failure of mortgagor to seek pre-

---

[7] The Ingemis have provided no legal authority for their position, espoused at the hearing, that their original default on the mortgage was somehow "erased" by the first trial modification plan or their attempts to otherwise establish a loan modification plan.

11

foreclosure injunction under RSA 479:25, II bars subsequent challenge to mortgagee's authority to foreclose the mortgage deed); Carideo v. PennyMac Loan Servs., LLC, No. 18-CV-911-SM, 2019 WL 635410, at *3 (D.N.H. Feb. 14, 2019) (quoting Brown v. Wells Fargo Home Mortg., No. 15-cv-467-JL, 2016 WL 3440591, at *3 (D.N.H. June 20, 2016) ("Because the Browns did not petition to enjoin the foreclosure sale before it occurred, to the extent that any of their claims challenge the foreclosure's validity and that they seek to have the sale undone, the Browns are barred from doing so.") (footnote omitted)).

Here, the record contains no evidence of the required pre-foreclosure petition. Specifically, the record reflects that foreclosure occurred in April 2017 and that the Ingemis filed their first claim contesting the foreclosure in 2019, in response to an eviction action. Am. Compl. (Doc. No. 25) ¶¶ 20-22. In addition, Deutsche has submitted documents demonstrating that the required pre-foreclosure notices were communicated to the Ingemis, including notice of their right to enjoin the foreclosure. Def. Supp., Ex. A. (Doc. No. 41-1) at 16. The Ingemis have not contested the adequacy of Deutsche's notice. Accordingly, Deutsche is entitled to summary judgment on Count II.

C.  Negligent Misrepresentation

In Count III, the Ingemis allege that Deutsche negligently represented to them that the April 8, 2019 foreclosure sale would not take place.  To succeed on this claim, the Ingemis must prove that Deutsche made a negligent misrepresentation of a material fact upon which the Ingemis justifiably relied.  Wyle v. Lees, 33 A.3d 1187, 1193 (N.H. 2011).  The court has already found that Deutsche made no such promise with respect to the foreclosure sale.  Therefore, Deutsche is entitled to summary judgment on Count III.

D. Covenant of Good Faith and Fair Dealing

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, 972 A.2d 1001, 1005-06 (N.H. 2009).  New Hampshire does not merely have "one rule of implied good-faith duty."  Id.  Rather, the covenant consists of "a series of doctrines, each of which serves different functions." Id.  These doctrines fall into three categories: "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Id.

In Count IV, the Ingemis' claims seem focused on the third category.  This category – limitation of discretion in contract performance – "is comparatively narrow[;] its broader function is to prohibit behavior inconsistent with the parties' agreed-

13

upon common purpose and justified expectations," id., as well as "with common standards of decency, fairness and reasonableness." Richard v. Good Luck Trailer Court, 943 A.2d 804, 808 (N.H. 2008). Deutsche argues that it is entitled to summary judgment only on the loan modification-related allegations. Def. Mem. (Doc. No. 37-1) at 7.

Construing the record in the light most favorable to the plaintiffs, see Theriault, 890 F.3d at 348, the undisputed material facts show, at most, a breakdown in communications between the parties, rather than any act on the part of Deutsche that ran afoul of the covenant of good faith and fair dealing. The Ingemis do not claim that the September 25, 2017, letter was not sent, only that they did not receive it. And they do not dispute that they did not contact Ocwen about their appeal until early November, despite having been told to expect an answer to their appeal by September 29, 2017. Nor do they dispute that they did not make any payments to Ocwen after July 31, 2017.

Against this undisputed factual backdrop, the court finds that Deutsche is entitled to summary judgment on Count IV, insofar as is relates to the loan modification agreement. Next, as the court has already found that there was no promise to

postpone the April 8, 2019, foreclosure, summary judgment is also granted as to that aspect of Count IV.[8]

E. New Hampshire Consumer Protection Act

In Count V, the Ingemis claim that Deutsche's alleged mishandling of the trial plan and foreclosure processes violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-a ("NHCPA").

Pursuant to N.H. Rev. Stat. An. § 358-A:2, "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  Although the statute is broadly worded, "not all conduct in the course of trade or commerce falls within its scope."  Axenics, Inc. v. Turner Const. Co., 62 A.3d 754, 769 (N.H. 2013).  "An ordinary breach of contract claim, for example, is not a violation of the CPA."

---

[8]At the hearing, the court indicated that it had construed the motion as only addressing the promise to delay foreclosure, relying on certain language in Deutsche's memorandum of law Counsel for Deutsche, in response to the court's inquiry, indicated that its summary judgment motion was intended to cover both aspects of Count IV – the loan modification agreement and the alleged promise not to foreclose. Deutsche did not address this issue in its supplemental briefing.  The court nevertheless relies on its earlier finding that there was no promise not to foreclose to grant Deutsche's motion. See Fed. R. Civ. P. 56(f)(2) (the court may grant summary judgment on grounds not raised by a party after notice and a reasonable time to respond); Fed. R. Civ. P. 56(f)(3) (the court may consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute).

Id.  Where, as here, a plaintiff does not rely on an enumerated NHCPA violation, conduct falls within the NHCPA's prohibition if it "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Id. at 768-69 (internal quotations omitted).

In their objection to Deutsche's motion, the Ingemis argue that two of Deutsche's acts violated the NHCPA.[9]  First, they cite Deutsche's refusal to reinstate the trial plan and its response when the Ingemis indicated in November 2017 that they did not receive the September 25, 2017, letter approving their appeal and reinstating the plan.  Pltf. Mem. (Doc. No. 39) ¶ 31.  As previously noted, the Ingemis argue only that they did not receive the September 25, 2017 letter informing them of their successful appeal and the process by which they should resume payments under the trial plan.  They do not claim the letter was not sent.  Under the circumstances, this claim falls far short of the "rascality" New Hampshire law requires.  "[T]here is no evidence in this record that [the defendant] . . . intentionally misrepresented facts, 'knowing [they] lacked sufficient knowledge to substantiate them,' which can satisfy the rascality test."  Rubygold Main Holdings, LLC v. Brian

---

[9]The Ingemis' objection cites no authority for these asserted legal propositions.

16

Gardner Carpentry, LLC, No. 20-CV-1006-JL, 2021 WL 2784822, at *15 (D.N.H. July 2, 2021), reconsideration denied, No. 20-CV-1006-JL, 2021 WL 3513896 (D.N.H. Aug. 10, 2021) (quoting Beer v. Bennett, 993 A.2d 765, 769 (N.H. 2010)).[10]

The sequence of events related to the trial plan would not "raise an eyebrow of someone inured to the rough and tumble of the world of commerce." ACAS Acquisitions v. Hobert, 923 A.2d 1076, 1094 (N.H. 2007). Nor are Ocwen's actions "within the penumbra of some common-law statutory or other established concept of unfairness"; it cannot be characterized as "immoral, unethical, oppressive, or unscrupulous." Pollack v. Goodwin & Assocs. Hosp. Servs., LLC, No. 20-CV-825-SM, 2021 WL 3853279, at *10 (D.N.H. Aug. 27, 2021).

As Judge Laplante noted in Rubygold, [t]he New Hampshire Supreme Court has held that similar, arguably worse, conduct does not satisfy the rascality test." 2021 WL at *14. See, e.g., Fat Bullies, Farm, LLC v. Devenport, 170 A.3d 990, 997-98 (N.H. 2017) (reversing NHCPA verdict where defendant, during a

---

[10] The record suggests that during a phone conversation in November 2017, an Ocwen representative read the contents of the September 25, 2017, letter to the Ingemis, before sending them a copy on November 20, 2017. Pltf. Obj., Exh. B. (Doc. No. 39-3), and that, in a subsequent conversation, asked the Ingemis if they could make a lump sum payment, as the September 25, 2017 letter contemplated. Whatever complaints the Ingemis have about this chain of events, their own exhibit belies any claim that Ocwen misrepresented any facts known to it.

business dispute, stated to plaintiff that "I know where you live . . . You can run but you cannot hide."); see also Barrows v. Boles, 687 A.2d 979, 986-87 (N.H. 1996) (selfish bargaining and business dealings not enough to justify damages claim under NHCPA); Turner v. Shared Towers VA, LLC, 107 A.3d 1236, 1248 (2014) (holding the defendants did not violate the CPA by requiring the plaintiff to honor his obligations under a loan agreement and promissory note, enforcing their rights under those documents by initiating a collection and foreclosure action upon default and rejecting the plaintiff's offer of compromise).

The Ingemis' second allegation of an NHCPA violation is related to the alleged "promise not to foreclose." Pltf. Obj. (Doc. No. 39) at 7-8.  The court having already ruled that there was no such promise, this claim also fails. Accordingly, Deutsche is entitled to summary judgment on Count 5.[11]

---

[11]During the hearing, the court, sua sponte, raised the issue of whether Deutsche was exempt from the provisions of the NHCPA pursuant to N.H. Rev. Stat Ann. § 358-A:3, I, which excludes certain regulated financial entities from the NHCPA's reach.
   Observing that N.H. Rev. Stat. Ann. § 358-A:3, V, placed the burden of proving an exemption on the defendant, the court allowed Deutsche to supplement its summary judgment briefing to address this issue.  In the absence of any evidentiary-quality factual support in their supplemental brief (Doc. No. 41) that places either Deutsche or the Ingemis' allegations within the CPA's exemptions, the court cannot find that, as a matter of law, Deutsche is exempt from the provisions of the NHCPA.

## **Conclusion**

Based on the foregoing, Deutsche's motion for summary judgment (Doc. No. 37) is granted in part and denied in part. Count I will be resolved at trial. Summary judgment is granted as to all other claims.

As the parties have agreed, the bench trial in this case will be scheduled for the week of August 7, 2023.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge


July 13, 2023

cc: Counsel of Record.